UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASSURANCE INDUSTRIES COMPANY, INC., a California corporation, | Case No:  C 10-1718 SBA |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| SNAG, INC., a Florida corporation; TERRENCE P. ANTON, an individual and resident of Oklahoma d.b.a. PLAYER DEVELOPMENT PRODUCTS, LLC and 3 G GOLF VENTURES, LLC; WALTER E. ARMSTRONG III, an individual and resident of Florida, d.b.a. PLAYER DEVELOPMENT PRODUCTS, LLC and 3 G GOLF VENTURES, LLC; PLAYER DEVELOPMENT PRODUCTS, LLC, a Florida limited liability company; 3 G GOLF VENTURES, LLC, a defunct Florida limited liability company, | Docket No. 49 |
| Defendants. | |

Plaintiff Assurance Industries Company, Inc. ("AIC") has alleged various state law causes of action against Defendants SNAG, Inc. ("SNAG"), 3 G Golf Ventures LLC ("3 G"), Player Development Products, LLC ("PDP"), Terrance Anton ("Anton") and Walter Armstrong III ("Armstrong").  Three of the Defendants, SNAG, 3 G, PDP and Anton (collectively "Anton Defendants"), now move to dismiss the First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 49. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion as to AIC's causes of action for an accounting, unjust enrichment and declaratory relief, and DENIES the motion as to the

remaining claims for fraud and breach of contract.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

### A.   FACTUAL SUMMARY

SNAG is a Florida corporation formed by Anton and Armstrong, and is the patent holder of two "golf teaching aids"; i.e., a golf game with a three-dimensional target and a golf training tool which provides audio feedback to aid golfers.  First Am. Compl. ("FAC") ¶¶ 2, 7.  Anton and Armstrong also formed a separate Florida limited liability company, 3 G, which Anton managed and operated as his alter ego.  Id. ¶¶ 7, 14, 39.

Sometime in 2000, Anton, ostensibly on behalf of 3 G, contacted AIC about designing and manufacturing products based on the SNAG patents ("Golf Products").  Id. ¶¶ 14-15.  In June 2000, "Anton promised that in exchange for satisfactorily designing the Golf  Products in time for the PGA show in January of 2001, Anton would grant [] Chen an equity stake in the company that owned the Golf Products."  Id. ¶ 17.[1]  AIC completed the product designs, and Anton placed his first order for the Golf Products in time for the PGA show.  Id.  Thereafter, 3 G forwarded purchase orders for the Golf Products to AIC, which, in turn, would produce and ship the products to 3 G and/or its customers.  Id. ¶ 19.

In or about 2002, 3 G began experiencing financial difficulty and fell behind on its payments to AIC.  Id. ¶ 21.  By Spring 2003, 3 G "stopped functioning," and Anton initially ignored AIC's demand for payment of past due invoices totaling $320,751.78.  Id. ¶ 21.  However, Anton promised Chen that he would pay the outstanding balance and reiterated that he would provide an equity stake in an unspecified company, presumably owned or controlled by Anton.  Id. ¶ 22.  On August 6, 2003, Chen contacted Anton about converting 3 G's debt into an equity position.  Id. ¶ 24.  Anton told Chen to "be patient"

---

[1] Throughout the pleadings, AIC refers to Anton's promise of providing Chen with equity "in the company that owned the products."  E.g., FAC ¶¶ 17, 20, 22, 24, 29, 30, 31, 34 and 33.  It is unclear whether that "company" was SNAG or some other entity.

and that he would follow up with him on that matter.  Id.  He also restated his promise to pay 3 G's outstanding balance.  Id.

On September 10, 2003, Chen filed a collection lawsuit against Anton.  Id.  Within a week of filing suit, Chen was contacted by Anton, who "persuaded him to hold off on the lawsuit by convincing [him] that they could work out payment without legal action with an agreement to let Chen sell SNAG Golf Products to satisfy the debt."  Id.  On November 27, 2003, Anton confirmed by telephone and email his agreement to allow AIC to sell SNAG Golf Products and to charge a sales commission and warehouse fees, which would be applied to 3 G's debt.  Id. ¶ 25.  At the same time, Anton continued to sell Golf Products on his own, which were shipped from AIC's warehouse.  Id.

Beginning in 2004, Anton began submitting purchase orders to AIC (for the shipment of SNAG products to Anton's customers) under the name of a new entity, Player Development Products, LLC ("PDP"), instead of through 3 G.  Id. ¶ 27.[2]  Despite the name change, Anton promised Chen that 3 G's debt would be paid by PDP.  Id.  This arrangement continued for several years.  Id. ¶ 28.  In 2006, however, Anton took the designs for Golf Products created by Chen to a company in China in attempt to have them copied and reproduced, without notifying Chen he was doing so.  Id.  At the same time, Anton surreptitiously changed the SNAG logo emblem to avoid any claim by AIC that he was misappropriating its designs.  Id.

In October 2007, Anton contacted Chen about designing new golf products and again promised Chen "equity in the company that owned the products."  Id. ¶ 29.  Anton also represented that 3 G's debts to AIC would be paid by PDP.  Id.  Based on Anton's promises, Chen appeared at trade shows in Florida and Puerto Rico in November 2007 to promote the products.  Id. ¶ 29-30.  At these shows, Anton repeated his claim that Chen would receive payment for 3 G's debt and an equity interest in one of his companies on the

---

[2] Apparently, AIC was then unaware that the State of Florida had administratively dissolved 3 G as of September 26, 2003.  Id. ¶ 40.

1  condition that AIC continued to manufacture and ship products to Anton's customers.  Id.
2  ¶ 30.

3     At a subsequent trade show in January-February 2008, Anton approached Chen and
4  told him that he now owned all rights to Golf Products and that he "was now closer to
5  fulfilling his promise to giving Mr. Chen equity in the business."  Id. ¶ 31.  Anton also
6  informed Chen that he should "cease his marketing of the product [sic] in order to refocus
7  solely on development and manufacture [sic]."  Id.  Chen continued to accept orders from
8  Anton during 2008 through 2009.  Id.  In 2008, however, Anton rescinded his authorization
9  for AIC to sell the Golf Products, without any explanation or satisfaction of 3 G's debt to
10  AIC.  Id. ¶ 35.  Anton also refused to allow AIC to sell off its inventory of SNAG Golf
11  Products, falsely claiming that they lacked "his newest brand name emblem[.]"  Id.

12     AIC alleges that Anton's conduct was fraudulent, and that he owes AIC an
13  outstanding balance of $261,673.01, interest in the amount of $142,000, product
14  development fees in the amount of $656,500, and the sum of $104,674.33 for goods
15  shipped to PDP and its customers.  Id. ¶¶ 43-45.  Further, AIC avers that Anton used 3 G
16  and PDP as his alter egos, these entities were undercapitalized, he used their income to pay
17  his personal debts, and that he otherwise failed to abide by the necessary formalities to
18  maintain their separate existence.  Id. ¶¶ 40-41.

19     **B.  PROCEDURAL HISTORY**

20     On April 22, 2010, AIC filed the instant action against SNAG, Anton, Armstrong
21  and PDP, alleging state law causes of action for fraud, breach of contract, accounting and
22  declaratory relief.  On October 14, 2010, the Court granted the two motions to dismiss filed
23  by the Anton Defendants.  10/14/10 Order, Dkt. 47.  The Court dismissed the Complaint
24  based on Plaintiff's improper joinder of DOE defendants, failure to allege fraud with
25  particularity in accordance with Federal Rule of Civil Procedure 9(b), and failure to allege
26  facts sufficient to show that 3 G and PDP are alter egos of Anton such that AIC's contract
27  claim could properly be alleged against the Anton Defendants.  The Court granted AIC
28  leave to amend to correct these deficiencies.

1      AIC filed its FAC on October 21, 2010.  In addition to dismissing the DOE

2 defendants and including additional allegations to support its fraud and alter ego claims,

3 AIC has, without leave of Court, joined 3 G as a party and added a cause of action for

4 unjust enrichment.  The Anton Defendants now move to dismiss all claims in the FAC.  In

5 its opposition, AIC only objects to the motion to dismiss with respect to its fraud and

6 breach of contract claims.  See Pl.'s Opp'n at 4.  AIC's opposition does not address the

7 Anton Defendants' motion as it pertains to its causes of action for unjust enrichment,

8 accounting and declaratory relief.[3]

9 **II.     LEGAL STANDARD**

10      A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

11 plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

12 a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

13 1990).  To survive a motion to dismiss for failure to state a claim based on deficient

14 pleading, a complaint must satisfy the notice pleading requirements of Federal Rule of Civil

15 Procedure 8, which requires that the complaint include a "short and plain statement of the

16 claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); see also

17 Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

18      When considering a Rule 12(b)(6) motion, a court must take the allegations as true

19 and construe them in the light most favorable to plaintiff.  See Knievel v. ESPN, 393 F.3d

20 1068, 1072 (9th Cir. 2005).  However, "the tenet that a court must accept as true all of the

21 allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare

22 recitals of the elements of a cause of action, supported by mere conclusory statements, do

23 not suffice."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  "While legal

24 _____

25      [3] It does not appears that Defendant Armstrong has been served.  Under Federal Rule
of Civil Procedure 4(m), a defendant may be dismissed without prejudice where "service of
the summons and complaint is not made on a defendant within 120 days after the filing of
26 the complaint…."  Within seven days of the date this Order is filed, AIC shall file a proof
of service evidencing service of process on Armstrong or file a voluntary dismissal of
27 Armstrong under Federal Rule of Civil Procedure 41(a).

28

conclusions can provide the complaint's framework, they must be supported by factual allegations."  Id. at 1950.  Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]"  Id. at 1951 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  Ultimately, the allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal quotations and citation omitted).   "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## III.   DISCUSSION

### A.   FRAUD

Fraud claims and claims that "sound in fraud" or that are "grounded in fraud" must satisfy the heightened pleading requirements of Rule 9(b), which provide, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); see Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  This means that the complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Where multiple defendants are involved, the plaintiff also must identify the role of each defendant in the alleged fraudulent scheme.  See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

The Anton Defendants contend that AIC's allegations of fraudulent conduct fail to pass muster under Rule 9(b). Defs.' Mot. at 10-11. The Court disagrees.[4] The crux of AIC's first cause of action for fraud is that Defendants falsely promised "that the outstanding debts would be paid or converted to an equity share in Anton's company that owned the rights to the products." FAC ¶ 51. To support its fraud claim, the FAC alleges facts concerning where and when these allegedly false representations were made and who made them. For example, the FAC alleges that in June 2000 at a dinner in China, Anton told Chen that he would receive an equity stake in the company that owned the Golf Products in exchange for his assistance in designing and manufacturing the Golf Products. FAC ¶ 17. Anton reiterated this promise at a PGA merchandise show which took place from January 24 to 27, 2002. Id. ¶ 20. After Anton fell into arrears for payment of the Golf Products, Anton told AIC "[e]ach time bills came due" that he would receive equity to cover any outstanding balance owed. Id. ¶ 22. On August 6, 2003, Chen spoke to Anton about converting his debt into equity. Anton responded again by promising that he would repay Chen and repeating his promise to provide equity. Id. ¶ 24. In addition, within a week of AIC having filed its collection suit on September 10, 2003, Anton spoke with Chen and convinced him to "hold off" on the lawsuit so that they could work out a payment arrangement which would allow AIC to sell Golf Products as a means of paying off Anton's outstanding debt. Id. ¶ 24. Later at a dinner held in connection with a trade show, which took place between October 30 and November 2, 2007, Anton again repeated his promises of payment and equity. Id. ¶ 29. Anton repeated these promises in March and June 2008. Id. ¶¶ 33-34.

---

[4] The Court notes that Plaintiff's opposition brief is cursory and non-responsive to a number of the points presented in the Anton Defendants' motion. Counsel for AIC should be aware that it is his responsibility to respond to the opposing parties' arguments in a thorough, yet succinct, manner. It is not the role of the Court to make parties' arguments for them. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

In short, the FAC adequately alleges the "who, what, when, where, and how" of the fraudulent conduct at issue.  AIC has provided sufficient factual detail in its pleadings such that the Anton Defendants "have adequate notice of what they are alleged to have done, so that they may defend against the accusations."  See Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995) (discussing purpose of Rule 9(b)).  The Anton Defendants' motion to dismiss is DENIED with respect to the first cause of action for fraud.

## B.    BREACH OF CONTRACT

Plaintiff's second cause of action is for breach of an implied-in-fact contract.  To plead such a claim under California law, plaintiff must allege: (1) the existence of a contract; (2) performance of the contract, or a legally cognizable excuse for nonperformance; (3) defendant's breach; and (4) resulting damage.  First Commercial Mortgage Co. v. Reece, 89 Cal.App.4th 731, 745 (2001).  "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  Yari v. Producers Guild of Am., Inc., 161 Cal.App.4th 172, 182 (2008); see also Cal.Civ.Code § 1621.  The statute of limitations for an implied-in-fact contract claim is two years.  See Cal. Code Civ. Proc. § 339(1).  "The general rule is that a suit for breach of an implied agreement accrues at the time of the breach."  Estate of Fincher, 119 Cal.App.3d 343, 352 (1981).

Defendants argue that AIC's contract claim accrued when AIC filed its collection lawsuit against 3 G in 2003, and therefore, such claim is barred by the applicable two-year statute of limitations.  Def.'s Mot. at 6.  This contention lacks merit.  The FAC alleges that Anton convinced AIC to drop its lawsuit based upon his promise to grant AIC the right to sell Golf Products and to retain a portion of the profits from those sales as an offset against the amounts owed to AIC, or alternatively, to grant Chen equity in the entity holding the intellectual property rights to Golf Products.  By making such representations and convincing AIC to forego litigation, Anton assumed a new obligation to pay 3 G's debt to AIC.  Anton allegedly breached such obligation when, in 2008, he rescinded AIC's right to

sell the Golf Products without satisfying his debt to AIC.  As such, the Court rejects the Anton Defendants' contention that AIC's contract claim necessarily accrued in 2003.

Alternatively, to the extent that AIC's contract claim is based specifically on 3 G's non-payment of its debt in 2003, the applicable limitations period is subject to equitable estoppel.  "[E]quitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (quoting Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980)).  In this case, AIC alleges that it decided not to pursue its collection action in 2003 in reliance on Anton's false assurances that he would pay off the debt to AIC through the sale of Golf Products or through the provision of equity.  The question of whether AIC ultimately can muster sufficient evidentiary support for application of the doctrine is beyond the scope of a motion to dismiss.  See Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (noting that because the assessment of equitable tolling often depends on matters outside the pleadings, "it is not generally amenable to resolution on a Rule 12(b)(6) motion.")  (internal quotations and citation omitted).  For pleading purposes, however, the allegations presented in the FAC are sufficient.  See Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993) (holding that a motion to dismiss should not be granted so long as the complaint "adequately alleges facts showing the potential applicability of the equitable tolling doctrine").

Finally, Defendants contend that the contractual obligations at issue apply to 3 G, and that AIC cannot hold the Anton Defendants liable under an alter ego theory because the supporting facts are too conclusory.  See Def.'s Mot. at 7-8.  There are two essential elements of an alter ego claim under California law:  (1) a finding that there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) that the failure to disregard the corporation would result in fraud or injustice.  See Doe v. Unocal, 248 F.3d 915, 926 (9th Cir. 2001).  Here, AIC has averred more than mere "conclusory allegations" in support of its alter ego theory.  The FAC

expressly alleges that 3 G and PDP are alter egos of Anton.  FAC ¶ 39.  With respect to 3 G, the pleadings aver that Anton was its managing member who operated as 3 G even after it was dissolved in 2003.  Id. ¶¶ 37-41.  Moreover, the payments made to AIC for SNAG products, both before and after 3 G's dissolution, as well as after the formation of PDP, were made by Anton from the same bank account.  Id.  In addition, Anton used the same telephone number and contact information throughout the duration of his relationship with AIC, regardless of the entity involved.  Id.  The Court finds that these and other allegations of alter ego liability in the FAC are sufficient at this stage of the litigation.

### C.   ACCOUNTING

"An accounting cause of action is equitable in nature, and may be sought 'where ... the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'"  Civic W. Corp. v. Zilla Indus. Inc., 66 Cal.App.3d 1, 14 (1977).  A claim for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.  Id.  In its FAC, AIC seeks "an accounting by all Defendants of all revenues, profits, and costs associated with the patents associated with this action."  FAC ¶ 66.  Defendants contend—and AIC does not dispute—that SNAG is the patent holder of the Golf Products.  Def.'s Mot. at 12.  Since AIC has not alleged that it is owed any amount based on patents that AIC does not own, or that the determination of the amount alleged owed is impracticable, and because AIC does not otherwise oppose dismissal of this claim, the Court GRANTS the Anton Defendants' motion to dismiss AIC's third cause of action for an accounting.

### D.   UNJUST ENRICHMENT

Plaintiffs' fourth cause of action for unjust enrichment is based on the allegation that "Plaintiff conferred a benefit on Defendants based on fraudulent statements presented by Defendants[.]"  FAC ¶ 68.  This claim is not properly before the Court, as AIC did not seek leave to amend under Rule 15 to include this claim as part of its FAC.  In addition, AIC does not oppose dismissal of its unjust enrichment cause of action.  The Court therefore

1 GRANTS the Anton Defendants' motion to dismiss AIC's cause of action for unjust

2 enrichment.

3      **E.**     **DECLARATORY RELIEF**

4      AIC's fifth and final cause of action is for declaratory relief.  To state a claim for

5 declaratory relief, the complaint must "set [ ] forth facts showing the existence of an actual

6 controversy between the parties relating to their respective legal rights and duties and

7 requests that these rights and duties be adjudged." Qualified Patients Ass'n v. City of

8 Anaheim, 187 Cal.App.4th 734, 756 (2010).  Declaratory relief should not be used to

9 determine issues that are already "fully engaged by other causes of action." Hood v.

10 Superior Court, 33 Cal.App.4th 319, 324 (1995).

11      AIC alleges that "[a] controversy exists as to the ownership of certain molds and

12 other equipment in the possession of Steven Chen."  FAC ¶ 72.  "Plaintiff also seeks

13 compensation and/or an ownership position in PDP and SNAG, because when defendants

14 ran dry on funds, AIC supported defendant Anton's business during his absence from 2004

15 and 2007." Id. ¶ 74.  The FAC is devoid of facts to support these claims.  In addition, AIC

16 has not offered any argument in opposition to the Anton Defendants' motion to dismiss this

17 cause of action.  Thus, the Court GRANTS the Anton Defendants' motion to dismiss AIC's

18 fifth cause of action for declaratory relief.

19 **IV.**    **CONCLUSION**

20      For the reasons set forth above,

21      IT IS SO ORDERED THAT:

22      1.     Defendants' motion to dismiss is GRANTED as to AIC's third cause of

23 action for an accounting, fourth cause of action for unjust enrichment and fifth cause of

24 action for declaratory relief, all of which are DISMISSED WITHOUT LEAVE TO

25 AMEND.  The motion is DENIED as to the first cause of action for fraud and the second

26 cause of action for breach of contract.  The hearing on the Anton Defendants' motion to

27 dismiss scheduled for January 25, 2011, is VACATED.

28

1      2.      Within seven (7) days of the date this Order is filed: (a) the Anton Defendants

2  shall file their Answer to the FAC; and (b) AIC shall file a proof of service as to Armstrong

3  or a stipulation for voluntary dismissal under Rule 41(a).

4      3.      The Case Management Conference scheduled for January 25, 2011, is

5  CONTINUED to **January 27, 2011 at 3:45 p.m.**  Prior to the date scheduled for the

6  conference, the parties shall meet and confer and prepare a joint Case Management

7  Conference Statement.  The joint statement shall be filed no later than five (5) days prior to

8  the conference and shall comply with the Standing Order for All Judges of the Northern

9  District of California and the Standing Order of this Court.  Plaintiff shall be responsible for

10 filing the statement as well as for arranging the conference call.  All parties shall be on the

11 line and shall call (510) 637-3559 at the above indicated date and time.

12     4.      This Order terminates Docket No. 49.

13     IT IS SO ORDERED.

14 Dated:  January 14, 2011

_____

SAUNDRA BROWN ARMSTRONG
United States District Judge